**REPORTER'S RECORD**
VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. MD407422

| | | |
|---|---|---|
| STATE OF TEXAS | ) | IN THE COUNTY COURT |
| | ) | |
| VS. | ) | AT LAW NO. 1 |
| | ) | |
| YONI LARA PERDOMO | ) | GALVESTON COUNTY, TEXAS |

-------------------------------

**HEARING**

-------------------------------

    On the 9th day of February, 2023, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable John Grady, Judge Presiding, held in Galveston, Galveston County, Texas;

    Proceedings reported by machine shorthand.

1 **A P P E A R A N C E S**

2

3 FOR THE STATE:

4     MS. KIMBERLY R. BRONSON
    Assistant District Attorney
5     SBOT NO. 24124375
    600 59th Street, Suite 1001
6     Galveston, Texas 77551
    (409)766-2355
7

8

9 FOR THE DEFENDANT:

10     MR. ANTUAN CANO
    Law Office of Ruben Franco, Jr.
11     SBOT No. 24131302
    406 N. Thompson
12     Suite 204
    Conroe, Texas  77301
13     (936)441-0204

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    FEBRUARY 9, 2023
 2              THE COURT:  Let's get on the record in
 3   Cause No. 407422, styled the State of Texas versus
 4   Perdomo -- Yoni Lara Perdomo.
 5              Could I get you to raise your right,
 6   please, ma'am -- or I guess, Counsel, why don't you call
 7   your witness.
 8              MR. CANO:  Yes, Your Honor.  I'm calling
 9   the records manager for the League City Police
10   Department, Ms. Teri Guerrero.
11              (SWORN BY THE COURT.)
12              THE COURT:  Go ahead.
13              MR. CANO:  Thank you, Your Honor.
14                    TERI GUERRERO,
15   having been first duly sworn, testified as follows:
16                   DIRECT EXAMINATION
17   BY MR. CANO:
18      Q.   So, Ms. Guerrero, all the questions that I'm
19   going to ask you today will be referring to Event ID
20   No. 2022-259374, also known as Report No. 22-2871; and
21   this is for an incident that happened May 13th of this
22   2022.
23              Are you familiar with what I'm -- with the
24   event ID that I'm asking you -- the report ID I'm asking
25   you about?
```

1       A.      Yes.
2       Q.      Okay.  Thank you.
3               So, the first question I have for you today
4  is what happened to the dispatch, slash, 911 recordings
5  and/or transcripts of those recordings?
6       A.      They were purged.
7       Q.      They were purged.  Okay.
8               When were the records purged?
9       A.      90 days after the initial call.
10      Q.      Do you know specifically the day that you
11 purged them?
12      A.      No.
13      Q.      Why were those records purged again?
14      A.      Auto expire.
15      Q.      Auto expire.
16              Who purged the records?
17      A.      The computer.
18      Q.      The computer.
19              And who authorized the destruction of the
20 records?
21      A.      The computer.
22      Q.      Okay.  So, is there any human aspect to the --
23 to that auto purge function?
24      A.      No.
25      Q.      It just does it on its own?

1	A.	Correct.
2	Q.	Okay.  Do you know why it purges it?
3	A.	It's 90 days.
4	Q.	Just 90 days.  There is no reason as to why?
5	A.	No.
6	Q.	It's not a memory issue?
7	A.	They all purge after 90 days.
8	Q.	Okay.  And when you say all, what does that --
9	what does that entail?
10	A.	Every recording.
11	Q.	Does that include video recordings?
12	A.	No.
13	Q.	Does that include the officer's vehicle audio
14	recordings?
15	A.	No.
16	Q.	It just has to do with dispatch?
17	A.	With audio.
18	Q.	Are there any records of the purge of the
19	aforementioned records?
20	A.	No.
21	Q.	Are there any records of authorization that --
22	or paperwork that authorized the destruction of those
23	documents?
24	A.	No.
25	Q.	Can you point me to the LCPD policy or name the

1  policy or the section number that authorized the purging
2  of those records?
3       A.   No.
4       Q.   If I were to show you a League City Police
5  Department General Order, would you be able to recognize
6  something?
7       A.   Yes.
8            MR. CANO:  Please let the record show that
9  I'm going to be showing Ms. Guerrero the League City
10 Police Department General Orders PPM -- PPM Manual 501.
11      Q.   (BY MR. CANO)  Ms. Guerrero, do you recognize
12 this record?
13      A.   Yes.
14      Q.   Okay.  Do you recognize the section of the PPM?
15      A.   Yes.
16      Q.   And what is that exactly -- what section am I
17 talking about?
18      A.   501.03.
19      Q.   Are you familiar with that section?
20      A.   Yes.
21      Q.   And that's in regards to record retention.  Is
22 that correct?
23      A.   Yes.
24      Q.   Okay.  In regards to record retention for the
25 League City Police Department, it states that:  Records

1  will be retained in the Records Department and/or purged
2  or destroyed only in accordance with local City
3  ordinance and the Texas State Library and Archives
4  Commission Retention Schedule.
5     A.   Yes.
6     Q.   Is that correct?
7     A.   Yes.
8     Q.   Okay.  Is that the policy that y'all follow?
9     A.   Yes.
10    Q.   Can you point me to any 90-day auto purge
11 policy in the League City Police Department General
12 Order PPM 501?
13    A.   No.
14    Q.   Ms. Guerrero, do you know if this is the
15 General Order that your agency provided us when we
16 subpoenaed y'all in the past?
17    A.   Yes.
18    Q.   Okay.  Ms. Guerrero, if I pointed you -- or can
19 you point to me the League City Code of Ordinance that
20 authorized the destruction of the audio records?
21    A.   No.
22    Q.   If I were to show you a copy or a printout of
23 the League City ordinance, would you be able to
24 recognize it?
25    A.   Yes.

1            MR. CANO:  Let the record show that I'm
2  showing Ms. Guerrero a copy of the League City -- City
3  Code of Ordinances, specifically Chapter 2, Article V
4  having to do with admin and records and info management.
5      Q.   (BY MR. CANO)  Ms. Guerrero, are you familiar
6  with this --
7      A.   Yes.
8      Q.   -- ordinance?
9            Are you familiar with Section 2-273,
10 Implementation of records control schedules; destruction
11 of records under schedule?
12     A.   Yes.
13     Q.   Is this policy applied at your agency?
14     A.   Yes.
15     Q.   Now, specifically regarding Section 2-273,
16 Subsection (b), it states:  A record whose rentention --
17           THE COURT REPORTER:  Slow down.
18           MR. CANO:  Sorry.  Where do you want me to
19 continue?
20           THE COURT REPORTER:  A record whose
21 rentention --
22     Q.   (BY MR. CANO)  A record whose retention period
23 has expired on a records control schedule shall be
24 destroyed unless an open records request is pending on
25 the record, the subject matter of the record is

```
 1  pertinent to a pending lawsuit, or the department head
 2  desires that the record be retained for an additional
 3  period.
 4           Are you familiar with that subsection?
 5     A.  Yes.
 6     Q.  Okay.  In regards to this lawsuit, would you
 7  call that recording pertinent to the League City Police
 8  Department in this lawsuit?
 9     A.  Would I?
10     Q.  Yes.
11     A.  Yes.
12     Q.  Would your agency?
13     A.  Yes.
14     Q.  Now, moving on to Section 2-273, Subsection
15  (c).  Prior to the destruction of a record under an
16  approved records control schedule, authorization of the
17  record must be submitted by the record liaison officer
18  and department head and obtained by the records
19  management officer from the records management
20  committee.
21           Are you familiar with that subsection,
22  Ms. Gutierrez --
23     A.  Yes.
24     Q.  -- or Guerrero?
25     A.  Yes.
```

```
 1      Q.   So, in asking you that, I'm going to ask you
 2   again.  So, your department didn't produce any
 3   authorization records of destruction?
 4      A.   Correct.
 5      Q.   Even though under the City Code of Ordinance
 6   they're supposed to?
 7      A.   Correct.
 8      Q.   And again, I'm going to ask you one more time.
 9   This is the ordinance that y'all follow in regards to
10   the City?
11      A.   Yes.
12      Q.   Okay.  So, is there any reason why your agency
13   failed to produce the authorization record as per the
14   policy?
15      A.   There is not one.
16      Q.   There is not one?
17      A.   Right.
18      Q.   And that's in regards to your department?
19      A.   Meaning?
20      Q.   Meaning that your department doesn't follow
21   this Code of Ordinance?
22      A.   No.  We do have to follow that.
23      Q.   But you still can't show me why?
24      A.   No, because it was auto expired.
25      Q.   Auto expired.  Okay.
```

1  Finally, would you be able to point to me
2 the policy section number from the Texas State Library
3 and Archives Commission Retention Schedule that would be
4 able to show me where you guys get your 90-day policy?
5     A.   No.
6     Q.   Okay.
7          MS. BRONSON:  Can you hand me that last one
8 you were talking about?
9          MR. CANO:   This one?
10         MS. BRONSON:  Yes.  Thank you.
11    Q.   (BY MR. CANO)  If I were to show you an
12 ordinance number would you be familiar with it from the
13 Texas Archives Commission?
14    A.   Yes.
15    Q.   Okay.  So, under the Part 2 law enforcement
16 record section from the Texas State Library and Archives
17 Commission, are you familiar with that section?
18    A.   Yes.
19    Q.   Okay.  Are you familiar with Section
20 PS4125-04a --
21    A.   Yes.
22    Q.   -- having to do with video and audio
23 recordings?
24    A.   Uh-huh.
25    Q.   Video -- so, I'm going to read the section.

1  Video or audio recordings from police vehicles of
2  persons on whom charges are not filed.
3           Is that -- is that the section that you
4  usually are familiar with?
5       A.   I'm familiar with all the sections.
6       Q.   Okay.  And there it does explicitly state
7  90 days after the date of the stop.  Is that correct?
8       A.   Uh-huh.
9       Q.   Is that the code section that y'all followed?
10      A.   Is that the code section that we set -- they
11 set the computer up to follow?
12      Q.   Yes.
13      A.   I would assume, yes.
14      Q.   You're assuming?
15      A.   I'm not part of that.  That's IT.
16      Q.   Okay.  But specifically -- and I'll reread it
17 again.  Video or audio recordings from police vehicles
18 of persons on whom charges are not filed.
19      A.   Okay.
20      Q.   In this case, Ms. Guerrero, charges were filed.
21      A.   Okay.
22      Q.   Right?
23           So, in regards to that, we would then
24 switch to Section PS4125-04b --
25      A.   Uh-huh.

1     Q.    -- which is:  Audio and recordings from police
2  vehicles of persons on whom charges are filed or related
3  to an administrative investigation of an officer.
4           In this situation not only was the suspect
5  charged, but there was also an investigation opened
6  against the officers that were there that day.
7     A.    I know.
8     Q.    Are you familiar with that?
9     A.    Which part?
10    Q.    With both parts, that he was charged and that
11 those officers are under investigation.
12    A.    The first part; not the second part.
13    Q.    Okay.  And in regards to that retention record,
14 specifically Section PS4125-05(b), Offense Investigation
15 Records, for any Class A and B misdemeanors and state
16 jail felonies, it's a record retention period of two
17 years.
18          Are you familiar with that section?
19    A.    Yes.
20    Q.    So, with saying all that, Ms. Guerrero, again,
21 I'll ask you:  Is there any reason why the records were
22 purged after 90 days even though they were legally
23 significant, even though you -- all the record policies
24 that your department follow says otherwise, why they we
25 were purged?

1  A.  It's an auto expire.  Every audio purges after
2 90 days.
3  Q.  One last question, Ms. Guerrero.  Did you ever
4 have any communication with any of the officers
5 regarding this case, specifically Officer Rector or
6 Officer Surratt?
7  A.  In reference to?
8  Q.  This case.
9  A.  No.
10        MR. CANO:  No further question, Your Honor.
11        MS. BRONSON:  No questions from the State,
12 Your Honor.
13        THE COURT:  Thank you.  If there's nothing
14 else, we're adjourned.
15        **(HEARING CONCLUDED.)**
16
17
18
19
20
21
22
23
24
25

1                    **REPORTER'S CERTIFICATE**

THE STATE OF TEXAS  )
COUNTY OF GALVESTON )

    I, Lynnette "Bitty" Erskine, Official Court Reporter in and for County Court at Law No. 1 of Galveston County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

    I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

    I further certify that the total cost for the preparation of this Reporter's Record is $105.00 and was paid by Defendant.

    WITNESS MY OFFICIAL HAND this the 21st day of February, 2023.

                        ___/S/ Lynnette "Bitty" Erskine___
                        Lynnette "Bitty" Erskine, CSR 3000
                        Expiration Date:  10/31/2024
                        Official Court Reporter
                        County Court at Law No. 1
                        600 59th Street, Suite 2204
                        Galveston, Texas 77551
                        (409)766-2235