United States District Court
Southern District of Texas
**ENTERED**
February 11, 2025
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:24-cv-129

YONI ORLI PERDOMO, *PLAINTIFF*,

v.

CITY OF LEAGUE CITY, *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The defendants have moved to dismiss Yoni Perdomo's claims in his amended complaint. Dkt. 15. The court will grant the motion.

## I.    Background

When sub-contractor Yoni Perdomo attempted to collect his pay and tools from a residential job site in League City from which he had been fired, the general contractor refused. Dkt. 11 ¶¶ 10–13. The homeowner then asked Perdomo to leave the property. *Id.* ¶ 13. Perdomo called 911 but struggled to communicate with dispatch due to his limited English proficiency. *Id.* ¶¶ 14–15. The general contractor took Perdomo's phone and took over the call. *Id.*

¶ 15. Perdomo then grew more frustrated after his ride from the site left him stranded. *Id.* ¶ 17.

Shortly after League City Police arrived, Perdomo approached Officer Trevor Rector on the sidewalk. *Id.* ¶ 20. When Rector asked if he needed a ride, Perdomo walked past him without responding. *Id.* After Rector asked Perdomo whether he spoke English, Perdomo responded over his shoulder, "I don't fucking speak English! Yo hablo [E]spañol!" *Id.* Rector pointed out that Perdomo had responded in English and asked him, "Are you stupid?" *Id.* Perdomo turned back toward Rector, and the two men had a heated verbal exchange before Perdomo began to walk away again. *Id.*

Rector called after him not to return and Perdomo immediately turned toward him again, asking, "You want to go to the jail? For me." *Id.* Rector told him that if he returned, he would go to jail. *Id.* Perdomo then quickly turned his back toward Rector, placed his hands behind his back, and jumped backward into Rector's chest twice, yelling, "Go to jail!"[1] Dkt. 2 at

---

[1] The court has adopted the body-camera video Perdomo attached to his complaint when it "blatantly contradict[s]" his factual allegations. Dkts. 2; 11 at 5 n.1; *see Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (permitting the adoption of video when it "blatantly contradict[s]" factual allegations in the pleadings). Here, Perdomo says that as he turned his back to Rector, he "put his hands behind his back in a submissive position" then, as he turned, "he back[ed] up into" Rector. Dkt. 11 ¶ 20. But even viewing the video in the light most favorable to Perdomo, the video

19:22:22–25. [2] The second time Perdomo jumped into Rector, Rector grabbed Perdomo in a bear hug and took him to the ground where Perdomo's head struck the sidewalk. *Id.* Rector berated and handcuffed Perdomo as Perdomo began to convulse. Dkt. 11 ¶ 21.

A few seconds later, Officer Tanner Surratt removed the handcuffs and shifted Perdomo to his side and back. *Id.* ¶¶ 22–24. Perdomo exhibited labored breathing and bled from his ear and face. *Id.* ¶¶ 23–24, 26–27. EMS arrived thirteen minutes later. *Id.* ¶ 30. Perdomo suffered a stroke after the encounter and claims to have experienced other severe mental and physical injuries. *Id.* ¶¶ 39, 41.

Perdomo sued the City of League City, League City Police Department ("LCPD"), Rector, and Surratt. *Id.* ¶¶ 3–6. In his amended complaint, he asserts claims of: (1) *Monell* liability against League City and LCPD; (2) excessive force against Rector and Surratt under 42 U.S.C. § 1983; (3) Fourth Amendment violations for excessive force and unreasonable seizure; (4) Fourteenth Amendment due-process violations; (5) assault against Rector and Surratt; (6) negligence per se; (7) false arrest;

---

"blatantly contradicts" his claim of submissive behavior or that he just "back[ed] up" into Rector. *Compare* Dkt. 11 ¶ 20, *with* Dkt. 2 at 19:22:22–25.

[2] The court uses the timestamp indicated on Rector's body-camera footage.

(8) malicious prosecution; (9) ratification in the alternative to *Monell* liability; (10) bystander liability against Surratt; and (11) negligent supervision against League City and LCPD. *Id.* ¶¶ 46–103.

The defendants notified Perdomo of their intention to file a motion to dismiss and he amended his complaint. Dkts. 11; 15 ¶ 2. The defendants now move to dismiss Perdomo's amended claims under Fed. R. Civ. P. 12(b)(6). Dkt. 15.

## II.   Legal Standard

### A. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* In reviewing the pleadings, a court accepts all well-pleaded facts as true, "construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). But the court does not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.

2005). Moreover, the court adopts any video recordings included in the pleadings "over the factual allegations," "viewed in the light most favorable to the plaintiff, . . . if the video 'blatantly contradict[s]' those allegations." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## B. Section 1983 and Qualified Immunity

Section 1983 provides a private right of action for the deprivation of certain rights, privileges, and immunities. 42 U.S.C. § 1983. To sue under § 1983, a plaintiff must (1) allege the defendant violated "a right secured by the Constitution and laws of the United States" and (2) show "a person acting under color of state law" committed the violation. *Petersen v. Johnson*, 57 F.4th 225, 231 (5th Cir. 2023) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). A complaint under § 1983 must also allege that the constitutional or statutory deprivation was not merely negligent but done intentionally or with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Section 1983 claims may be brought against government employees in their individual or official capacities or against a governmental entity, but such claims are subject to qualified immunity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)); *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181,

194 (5th Cir. 2009). Qualified immunity "shields officers from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (quotations and citation omitted). To be "clearly established," the court "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (quotations and citation omitted). In essence, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *City of Tahlequah*, 595 U.S. at 12 (quotations and citation omitted).

In the context of a Rule 12(b)(6) motion, the court determines whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). The plaintiff must plead "specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.*

## III.  Analysis

The defendants have moved to dismiss Perdomo's complaint because it fails to (1) allege constitutional violations, (2) refute qualified immunity, (3) overcome individual or governmental immunity, and (4) establish punitive or exemplary liability for League City. Dkt. 15 ¶¶ 12–13.

The court will address Perdomo's alleged constitutional violations before turning to his state claims.

### A. Fourteenth Amendment

Perdomo brings two claims under the Fourteenth Amendment: (1) a due-process violation resulting from Officer Rector's alleged excessive force and (2) delayed emergency medical care. Dkt. 11 ¶ 57. As to the first, excessive-force claims fall under the Fourth Amendment, not the Fourteenth; therefore, the court will conduct the excessive-force analysis in the Fourth Amendment section of this opinion. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that all excessive-force claims come under the Fourth Amendment's reasonable standard, not Fourteenth Amendment substantive due process).

To state a claim for delayed medical care, Perdomo's complaint must allege facts showing the officers acted with deliberate indifference to his medical needs. *Austin v. City of Pasadena*, 74 F.4th 312, 327–28 (5th Cir.

2023). Perdomo must include facts that the officers "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Sims v. Griffin*, 35 F.4th 945, 951 (5th Cir. 2022) (citation omitted).

Perdomo pleads no facts to this effect. The complaint notes Perdomo's physical condition, that thirteen minutes elapsed between the incident and the ambulance's arrival, and the officers' interactions with Perdomo, but nothing alleging deliberate indifference. Dkt. 11 ¶¶ 21–30. Without more, Perdomo's Fourteenth Amendment claim for delayed medical care is conclusory and fails. *Id.* ¶ 57; *see Plotkin*, 407 F.3d at 696. It is therefore dismissed.

### B. Fourth Amendment

#### 1. Excessive Force and Bystander Liability

Perdomo's excessive-force claim must satisfy two distinct "reasonableness inquiries" to survive a Rule 12(b)(6) motion to dismiss. *Hogan*, 722 F.3d at 735 (citing *Saucier v. Katz*, 533 U.S. 194, 200–02 (2001)). First, the court considers whether the complaint sufficiently alleges unreasonable force; and second, whether the right was clearly established

such that a reasonable officer would know the force used was excessive. *Id.* (citation omitted). The court will take each in turn.

To state an excessive-force claim, Perdomo must plead "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (citation omitted). Ultimately, factors two and three combine, and "the touchstone of our inquiry is simply the reasonableness of the force employed." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (citation omitted). The court determines reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396. The court must consider "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Because Perdomo clearly satisfies the first element, the court must next determine if he has pleaded that his injury resulted from unreasonable excessive force. Dkts. 1-3; 11 ¶¶ 21–35, 39–41; *Ontiveros*, 564 F.3d at 382. Perdomo claims he "was in a submissive position—his back turned and his hands behind his back" and that he "back[ed] up into Officer Rector, who

then "body-slamm[ed him] into the sidewalk, forehead first" before handcuffing him. Dkt. 11 ¶¶ 20, 53. In considering a motion to dismiss, the court would normally accept this as true and move on; but the court must also consider the body-camera footage Perdomo attached as an exhibit. *See* Dkt 2; *Harmon*, 16 F.4th at 1163 (quoting *Scott*, 550 U.S. at 380) (permitting adoption of video when it "blatantly contradict[s]" factual allegations).

Here, the footage "blatantly contradicts" Perdomo's factual allegations, even when viewed in the light most favorable to him. *See id.* The video diverges from the allegations after Rector tells Perdomo that if he returns, he will go to jail. Dkt. 11 ¶ 20. In that moment, all in one quick motion, a visibly aggravated Perdomo places his hands behind his back unprompted, turns, and slams the back of his shoulder into Rector's chest twice, knocking Rector backward. Dkt. 2 at 19:22:22–25. On the second strike, Perdomo's body obscures the video until they are on the ground. *Id.* at This contradicts Perdomo's characterization that Rector slammed him into the ground without reason when Perdomo was otherwise "submissive." Dkt. 11 ¶¶ 20, 53.

The moment Perdomo initiated contact with Rector, Rector had probable cause to arrest him. *See* Dkt. 11-1 (citing Tex. Pen. Code § 38.15(a)(1) in probable-cause affidavit); Tex. Pen. Code § 38.15(a)(1) (committing an offense by interfering with "a peace officer while the peace

officer is performing a duty or exercising authority imposed or granted by law"); *see also id.* § 22.01(a)(3) (defining assault as "intentionally or knowingly caus[ing] physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative"); *id.* § 22.01(b)(1) (elevating the assault to a felony if committed against "a public servant while the public servant is lawfully discharging an official duty"). The video supports probable cause to arrest Perdomo under either an interfering-with-a-police-officer theory or the felony-assault theory. *See Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004) ("Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." (quotation and citation omitted)); Tex. Code Crim. Pro. Ann. art. 14.03 (permitting warrantless arrest where probable cause of a penal-code violation exists). At that point, Rector had "the right to use some degree of physical coercion" to effect the arrest. *Graham,* 490 U.S. at 396.

Application of the *Graham* factors to the allegations shows Rector used reasonable force to effect an arrest. *See id.* (instructing courts to consider "the severity of the crime at issue, whether the suspect poses an immediate

threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight"). Perdomo made aggressive physical contact with a police officer, thereby committing felony assault. That contact interfered with Rector's official duties and presented an immediate threat to Rector's safety. Thus, the force employed by Rector to arrest an individual in the commission of a felony who was actively threatening the safety of an officer was reasonable.

Moreover, even if the force used by Rector was unreasonable, his actions did not violate clearly established law; therefore, he remains entitled to qualified immunity. *Cf. Hogan*, 722 F.3d at 734–35 (explaining that even if mistaken on the reasonableness of force, qualified immunity applies unless "the right was clearly established such that a reasonable officer would know that the particular level of force used was excessive"). The Fifth Circuit has repeatedly found reasonable the force used by officers in taking an individual down to a concrete surface for non-compliant or aggressive behavior like Perdomo's. *See, e.g.*, *Grice v. Younger*, No. 22-20144, 2023 WL 2401584, at *2–3 (5th Cir. Mar. 8, 2023) (holding reasonable officer's take-down of a mildly resistant woman onto a concrete surface after giving warnings, despite her injuries); *Solis*, 31 F.4th at 979, 982–83 (holding reasonable officer's conduct grabbing and pulling a woman's arm behind her back and

taking her to the ground after a struggle); *Brothers. v. Zoss*, 837 F.3d 513, 515–16, 518–20 (5th Cir. 2016) (holding reasonable under the circumstances officers' forcible removal of an overweight, intoxicated man from his truck following his noncompliance, causing him to "slam[] hard into the pavement" and rendering him quadriplegic).

In defense of his claim, Perdomo has not pointed to any contrary authority. *See Hogan*, 722 F.3d at 735 (requiring "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question" to be clearly established (quotations and citation omitted)). He first points to *Goodson v. City of Corpus Christi*, where the Fifth Circuit denied qualified immunity for officers who tackled a plaintiff—breaking his shoulder—and then yanked on that arm to handcuff him. 202 F.3d 730, 733–34, 740 (5th Cir. 2000); *see* Dkt. 16 at 11. But in *Goodson*, the Fifth Circuit held that significant fact disputes existed as to whether lawful probable cause or reasonable suspicion existed for the officers to detain the man in the first place and, considering that, whether the officers exercised reasonable force when they tackled him; this precluded qualified immunity at the summary-judgment phase. *Id.* at 740. Here, probable cause existed, making *Goodson* distinct and unhelpful to Perdomo.

The factual context of the other two cases Perdomo cites lay even farther afield. *See Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 326–27, 335–36 (5th Cir. 2020) (holding unreasonable officers' conduct when a submissive claimant died after numerous officers dogpiled, severely beat, and tasered him repeatedly while he had a mental-health crisis); *Pratt v. Harris Cnty.*, 822 F.3d 174, 178–79, 182 (5th Cir. 2016) (holding reasonable officers actions outside department procedure when they repeatedly tasered, tackled, and hog-tied a non-compliant man while he wore handcuffs, despite his later death). Because of the extreme factual distinctions, neither case can be considered controlling or persuasive, and so neither has any impact on Rector's qualified immunity.

Perdomo's complaint—including the body-camera footage—fails to allege unreasonable force. *See Ontivero*, 564 F.3d at 382. Perdomo has pleaded no "specific facts" allowing the court to infer that Rector is liable for his injury or that defeat Rector's defense of qualified immunity. *Backe*, 691 F.3d at 648; *see Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (noting that in determining qualified immunity on motion to dismiss, courts review the defendant's conduct "as alleged in the complaint" for "objective legal reasonableness"). For these reasons, Perdomo has failed to state a claim for excessive force and Rector is entitled to qualified immunity.

Perdomo's complaint also asserts an excessive-force claim against Officer Surratt for the same incident. Dkt. 11 ¶ 54. But the complaint does not contain any facts to this effect, *see* Dkt. 11 ¶¶ 20, 54, and the body-camera footage shows only that Surratt stood nearby at the time Perdomo contacted Rector and that he helped Rector hold Perdomo down once Perdomo was on the ground. Dkt. 2 at 19:22:22–29. But as the camera is blocked during the take-down, it reveals nothing of Surratt's role in the take-down itself. *Id.* at 19:22:22–25.

Because Perdomo fails to allege facts showing either officer violated his constitutional rights, Rector and Surratt have qualified immunity. *See City of Tahlequah*, 595 U.S. at 12. His Fourth Amendment excessive-force claims are therefore dismissed.

### 2. Bystander Liability

Because Perdomo fails to state a claim for excessive force, he also fails to state a claim for bystander liability against Surratt. Perdomo claims Surratt violated his Fourth Amendment rights by failing to protect him "from another officer's use of excessive force." Dkt. 11 ¶¶ 93–99. To state a claim for bystander liability, Perdomo must allege Surratt "(1) kn[ew] that a fellow officer [was] violating an individual's constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se] not to act."

*Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citation omitted). The bystander claim fails without a sufficient allegation of excessive force.

This aside, Perdomo's allegation that Surratt "observed the take-down, then assisted Respondent Rector in handcuffing" him does not allege that Surratt had a reasonable opportunity to prevent harm and chose not to act. Dkt. 11 ¶ 98; *see Whitley*, 726 F.3d at 646. For liability to arise, the Fifth Circuit requires the officer's "acquiesc[ence] in" the violation, not just his "mere presence in the vicinity." *Joseph*, 981 F.3d at 343 (quotations and citation omitted). The video, as well as Perdomo's complaint, show only that Surratt was in the vicinity, not that he acquiesced. Dkt. 11. For these reasons, the court dismisses the bystander-liability claim.

### 3. Unreasonable Seizure and False Arrest

The remaining claims under § 1983 all turn on the presence of probable cause. Because the court has found probable cause existed for Perdomo's arrest, he fails to state a claim for unreasonable seizure and false arrest.

To state a claim of unreasonable seizure, Perdomo must allege he was seized within the meaning of the Fourth Amendment and that the seizure was unreasonable. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989). Perdomo claims the officers could have easily restrained and handcuffed him

in his "submissive" state, and their failure to do so amounted to an unreasonable seizure under the Fourth Amendment. Dkt. 11 ¶ 54.b.

Though the officers undoubtedly seized Perdomo by taking him to the ground and handcuffing him, that seizure was reasonable. *See Arnold v. Williams*, 979 F.3d 262, 268 (5th Cir. 2020) (stating seizure occurs when "an officer applies physical force" or "makes a show of authority to which an individual submits"). Probable cause for the seizure arose when Perdomo aggressively contacted Rector. Because probable cause existed to arrest Perdomo, the seizure was reasonable. *See Glenn v. City of Tyler*, 242 F.3d 307, 313–14 (5th Cir. 2001) (explaining that without allegations of an arrest conducted in an "extraordinary manner," "the government's interest in enforcing its laws outweigh the suspect's privacy interest and arrest of the suspect is reasonable" (quotations and citation omitted)). Perdomo's claim for unreasonable seizure is dismissed.

Next, Perdomo claims the officers falsely arrested him in violation of the Fourth Amendment. Dkt. 11 ¶¶ 69–75; *see Haggerty*, 391 F.3d at 655 (requiring lack of probable cause for arrest to state a false-arrest claim). In support, Perdomo notes that he called 911 (as opposed to someone calling 911 on him), that Rector incited him to return after he attempted to depart, and that he turned away from Rector and placed his hands behind his back

without any request from Rector. Dkt. 11 ¶¶ 69–75. But Perdomo fails to

show how his call to 911 means that his later aggressive conduct did not give

Rector probable cause to arrest him. Moreover, whether an "officer himself

may have created the situation does not change the [qualified-immunity]

analysis." *Id.* ¶ 44; *see Young v. City of Killeen*, 775 F.2d 1349, 1352–53 (5th

Cir. 1985) (explaining that even when the officer creates a dangerous

situation, it does not create § 1983 liability without a constitutional

violation). Ultimately, because probable cause existed for Perdomo's arrest,

the court dismisses Perdomo's false-arrest claim.[3]

---

[3] The court would reach the same finding applying the defendant's independent-intermediary doctrine argument. Dkt. 15 at 14–15. Under the doctrine, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate . . . , the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party, even if the warrant application was sought and granted after the arrest took place." *Buehler v. Dear*, 27 F.4th 969, 990 (5th Cir. 2022) (quotations and citations omitted). Surratt submitted a probable-cause affidavit, Dkt. 11-1, which caused a Galveston County judge to issue a warrant, Dkt. 11-2. This is sufficient to bar liability for false arrest under the doctrine.

The court does not consider Perdomo's assertions that the affidavit "was defective and reckless," thus rendering the independent-intermediary doctrine inapplicable, because this assertion appears only in his response to the motion to dismiss, Dkt. 16 at 10–11, and not in his complaint, Dkt. 11. Even if it had appeared, the video footage controverts his claim that the affidavit omitted facts supporting his public-duty-interference charge. Dkts. 2 at 19:22:22–25; 16 at 11; *see* Dkt 11-2 (listing in the warrant "interfere w/ public duties").

### C. Municipal Liability

Perdomo asserts League City and LCPD have § 1983 liability under *Monell*. Dkt. 11 ¶¶ 46–50; *see Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 694 (1978). A *Monell* claim has three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). *Monell* liability does not arise via respondeat superior but rather a "directly attributable . . . official action or imprimatur." *Id.*

As a threshold matter, Perdomo cannot sue LCPD because he has failed to plead facts showing LCPD is a separate jural entity from League City. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) ("In order for a plaintiff to sue a city department, it must enjoy a separate legal existence." (quotation and citation omitted)). Because he pleads no facts showing LCPD "enjoy[s] a separate legal existence" from League City, he has sued an entity with no "jural existence." *Id.* at 313–14 (quotations and citations omitted). For this reason, the court dismisses Perdomo's claim against LCPD.

Next, *Monell* liability cannot exist unless the plaintiff pleads a constitutional violation. *Piotrowski*, 237 F.3d at 578. Because Perdomo has

failed to plead a constitutional violation, the court dismisses Perdomo's remaining *Monell* claims.

Even if he had pleaded a constitutional violation, Perdomo fails to allege facts of any policy or "moving force" behind that violation. *Id.* Based on an unrelated lawsuit that raised similar claims against League City, Perdomo instead claims League City's failure to train its officers made these sorts of violations the status quo. Dkt. 11 ¶ 50 (citing *West v. City of League City*, No. 3:21-CV-371, 2023 WL 5760032 (S.D. Tex. Mar. 31, 2023)). But the inadequate-training allegations fail to allege with any specificity *how* the entities failed to train. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (requiring "focus [] on the adequacy of the training program in relation to the tasks the particular officers must perform" for failure-to-train liability (citation omitted)). And the "pattern and practice" claim fails because a pattern "requires sufficiently numerous prior incidents." Dkt. 11 ¶ 50; *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (quotations and citation omitted)). But Perdomo points to just a single prior incident.

Perdomo also fails to state a *Monell* claim for ratification. Dkt. 11 ¶¶ 88–92; *see Young v. Bd. of Supervisors*, 927 F.3d 898, 903 (5th Cir. 2019) (explaining that liability arises when a supervisor ratifies a subordinate's

act). Perdomo claims ratification because Surratt "ratified the unlawful use of Excessive Force against [Perdomo]" by failing to intervene. Dkt. 11 ¶ 91. Lack of a constitutional violation aside, Perdomo pleads no facts alleging Surratt was a supervisor or that Rector was his subordinate. *See Young*, 927 F.3d at 903. Moreover, this case lacks the "extreme factual situation[]" required by the Fifth Circuit for ratification, *i.e.*, "an obvious violation of clearly established law." *Id.* (citation omitted). Without pleading that a supervisor ratified Rector's actions, the ratification claim fails.

Finally, Perdomo fails to state a claim for negligent supervision. Dkt. 11 ¶¶ 100–03. He must plead facts alleging that (1) the defendants owed him a duty to supervise its employees, (2) a breach of that duty occurred, and (3) the breach proximately caused his injury. *Prim v. Stein*, 6 F.4th 584, 592 (5th Cir. 2021). Instead, the complaint concludes League City and LCPD "failed to hire, supervise, or train their subordinates" without alleging any facts to support the conclusion. Dkt. 11 ¶ 103.

Because Perdomo has not pleaded facts sufficient to state a claim for any liability under *Monell*, the court dismisses his municipal-liability claims.

### D. State-Law Claims

### 1. Malicious Prosecution

Perdomo fails to state a claim for malicious prosecution under Texas law. Dkt. 11 ¶¶ 76–87. Malicious prosecution requires seven elements:

> (1) the commencement of a criminal prosecution against [him]; (2) causation (initiation or procurement) of the action by the defendant[s]; (3) termination of the prosecution in [Perdomo]'s favor; (4) [his] innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to [Perdomo].

*Matthews v. Green,* No. 23-10178, 2024 WL 448352, at \*2 (5th Cir. Feb. 6, 2024) (quoting *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997)). Because probable cause existed at the time of the arrest and the warrant's issuance, Perdomo's claim for malicious prosecution fails and is dismissed.

### 2. Assault

Perdomo brings assault claims against Rector and Surratt in their individual capacities and not, as he emphasizes, against League City or LCPD. Dkt. 11 ¶ 59. But under Texas law, "when suit is brought against a government employee for conduct within the general scope of his employment, and suit could have been brought under the [Texas Tort Claims Act] against the government . . . the suit is considered to be against the employee in the employee's official capacity only." *Alexander v. Walker*, 435

S.W.3d 789, 791 (Tex. 2014) (quotations and citations omitted). Indeed, an official-capacity suit is "*not* a suit against the employee; it is, in all but name only, a suit against the governmental unit." *Id.* (citation omitted). Accordingly, the court must dismiss a suit against an employee "who is considered to have been sued in his official capacity," regardless of how the plaintiff characterizes the suit. *Id.* at 791.

Rector and Surratt acted within their scope of employment as police officers when they arrested Perdomo. *See id.* at 792 (holding that allegations against police officers for allegedly improper conduct during an arrest were "based on conduct within the general scope of the officers' employment"). And because they acted within that scope, Perdomo could have sued the government. *See id.* at 791. Accordingly, Perdomo has sued the officers in their official, not individual, capacities, thus the court must dismiss plaintiff's assault claims against them.

### 3. Negligence per se

Perdomo asserts negligence per se claims against all defendants based on alleged violations of the LCPD General Order "Authorization to Use Force, Reference Number: 601." Dkt. 11 ¶ 64. He bases this claim on the same facts as his excessive-force and assault claims. *Id.* ¶¶ 63, 65.

To state a claim for negligence per se, Perdomo must allege the defendants violated a "legislatively imposed standard of conduct," *i.e.*, a statute or ordinance. *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979). But Perdomo alleges violation of a departmental order, not a statute or ordinance. Dkt. 11 ¶ 64. Because the complaint does not allege violations of a "legislatively imposed standard of conduct," Perdomo has failed to state a claim for negligence per se. *Carter*, 584 S.W.2d at 278.

Even if he had alleged a violation of an ordinance or statute, Perdomo cannot overcome immunity. When excessive-force claims arise from a lawful arrest, "the claim is for battery alone." *City of Watauga v. Gordon*, 434 S.W.3d 586, 593 (Tex. 2014). Perdomo cannot mischaracterize an intentional tort as negligence to avoid League City's immunity from intentional torts. *Forgan v. Howard Cnty.*, 494 F.3d 518, 520 (5th Cir. 2007) ("A Texas governmental unit is generally immune from tort liability unless the legislature has somehow waived immunity."). Moreover, because this claim arises out of battery and not negligence, any claim against Rector and Surratt cannot be sustained for the same reasons described above in the assault analysis.

The negligence per se claim is dismissed.

24/25

\*     \*     \*

For the foregoing reasons, the court grants the defendants' motion to dismiss on all claims. Dkt. 15. The court will enter a final judgment separately.

Signed on Galveston Island this 11th day of February, 2025.


JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE